## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Trade Center Management Associates, LLC<br>1300 Pennsylvania Avenue, NW<br>Room G.11-10<br>Washington, DC 20004-3002<br><br>        Plaintiff,<br><br>   v.<br><br>U.S. General Services Administration,<br>1800 F Street, NW<br>Washington, DC 20405<br><br>        Defendant. | Civil Action No.: _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT
## & PERMANENT INJUNCTIVE RELIEF

Plaintiff Trade Center Management Associates, LLC ("TCMA"), by its undersigned attorneys, for its complaint states as follows:

## NATURE OF THE ACTION

1.      This case concerns the threatened release by the Defendant, the U.S. General Services Administration ("GSA"), of TCMA's confidential, proprietary, and trade secret information in violation of law.  This information was provided to GSA through TCMA's performance of a U.S. Government contract.  The release of this information will cause competitive irreparable harm to TCMA and adversely impact TCMA's ability to successfully perform under its existing contract.

2.      The GSA has threatened to release this information absent an injunction from this Court.  As such, TCMA seeks a declaratory judgment that the confidential, proprietary, and trade

secret information which GSA intends to release cannot be disclosed, and a permanent injunction preventing GSA from disclosing same.

3.     While TCMA reserves all rights, TCMA is not seeking a temporary restraining order or preliminary injunction at this time because, pursuant to the terms of the contract underlying this dispute, when, like here, a dispute regarding the release of contractor information exists, GSA may <u>not</u> release such information for 90 days after GSA's written determination that it intends to release the information, which is August 18, 2016; and, moreover, if, like here, TCMA files suit within that 90-day period, GSA may <u>not</u> release such information prior to a final determination by the Court.

## <u>JURISDICTION & VENUE</u>

4.     This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 ("Federal question"), in that it is an action arising under the laws of the United States, including 41 U.S.C. § 4703, the judicial review provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, and the Trade Secrets Act, 18 U.S.C. § 1905. Plaintiff also invokes this Court's authority to issue declaratory relief pursuant to 28 U.S.C. §§ 2201-2202.  Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(a) and 1391(e)(1)(B) because a substantial portion of the events giving rise to this action occurred within the RRB/ITC and/or GSA's offices, both of which are in the District of Columbia, and because GSA is headquartered in the District of Columbia.

## THE PARTIES

5.     Plaintiff, TCMA, is a Delaware corporation with its principal place of business in Washington, DC.  Under the Contract, TCMA provides a wide array of facility management and brokerage services for GSA in connection with a GSA-owned facility.

6.     Defendant, GSA, is an independent agency of the United States Government.  Its principal mission is provide real estate, acquisition, and technology services to other federal agencies.  Among other locations, GSA operates out of the facility at issue.  However, its headquarters are located in the GSA Building in the southwest quadrant of DC.

## STATEMENT OF FACTS

7.     TCMA and GSA are parties to Contract No. GS-11P-09-ZG-C-0064 ("the Contract", which previously was identified as Contract No. GS-11P-02-ZGC-0160), whereby TCMA provides trade center management services at the GSA-owned Ronald Reagan Building/International Trade Center ("RRB/ITC") located at 1300 Pennsylvania Avenue—between Pennsylvania and Constitution Avenues and 12th and 14th Streets—in the Northwest quadrant of Washington, DC.

8.     After holding a public contract competition, GSA awarded the Contract to TCMA on December 2, 2008.  The Contract consists of a base period and nine one-year option periods. Currently, the Contract is in Option Period 8.  Prior to being awarded the Contract, TCMA (or its predecessor) served as the trade center manager at the RRB/ITC for approximately a decade under an earlier contract ("the Predecessor Contract").

9.      Among other services, the Contract requires that TCMA generate revenue for GSA in specific areas by licensing office space, food court space, and other retail space at RRB/ITC to third party licensees (called sub-licensees), and  operating the onsite underground parking garage (by charging users).   These licenses are between TCMA and the third-party licensees.

10.     The Contract includes Minimum Revenue Guarantees ("MRGs"), which are annual revenue goals that GSA contends TCMA must achieve during each Option Period by generating revenue through its management of the RRB/ITC (*e.g.*, by generating rent from sub-licensees of office space and retail space, which is paid directly to the U.S. Government).   GSA has taken the position that, if TCMA falls short of the MRG, TCMA is liable dollar-for-dollar for the alleged shortfall.

11.     As part of its duties under the Contract, TCMA furnishes "deliverables" to the GSA, which consist of various types of information regarding TCMA's performance under the Contract and other information relating the Contract and the RRB/ITC which TCMA formulates by employing its proprietary  and confidential business processes and methodologies.   One such deliverable includes the terms/conditions of the sub-licenses that TCMA has entered into with third parties.   This includes the rent-per-square-foot that TCMA and the sub-licensee have contractually agreed the sub-licensee will pay GSA for use of the space.

12.     Under both the Predecessor Contract and the current Contract, TCMA for years designated that the rent-per-square-foot agreed to with sub-licensees was confidential and proprietary to TCMA, and GSA observed these restrictions.   Indeed, the parties have operated continuously for years under this understanding.

13.     On June 11, 2013, during Option Period 5, in an abrupt about face, the then-GSA Contracting Officer ("C.O."), Michael Vrobel, issued a letter to TCMA rejecting 15 of the Option Period 5 deliverables furnished by TCMA.  Included in the 15 identified deliverables was information relating to the rent-per-square-foot paid by sub-licensees.  GSA's letter alleged that such deliverables were being rejected because TCMA had marked the information in the deliverables as proprietary.

14.     GSA's letter alleged that multiple contract clauses in the Contract supported its position that these deliverables were not proprietary, confidential, and/or trade secret, including Federal Acquisition Regulation ("FAR") clause 52.227-14, Data Rights, which is codified at 48 C.F.R. 52.227-14.

15.     TCMA submitted an initial response on June 21, 2013 indicating its disagreement with GSA's position and confirming that, as permitted by FAR 52.227-14, TCMA would provide a follow-up response within 60 days of GSA's letter.

16.     On August 9, TCMA submitted its follow-up response.  In its response, TCMA stated that the information at issue constitutes TCMA confidential, proprietary, and trade secret information.  TCMA explained that it expended significant money and effort compiling this information, and that TCMA derives independent economic value from the information.  TCMA further explained that it safeguards the information internally and does not make it available to the public or TCMA's competitors.  Further, TCMA explained that if such proprietary information was shared with the public or competitors, it would significantly undercut TCMA's competitiveness.  Moreover, TCMA explained that it has submitted, and GSA has accepted, deliverables marked as proprietary in the past under the Contact and that GSA accepted similar

restrictive markings on similar information in another context.  Finally, the letter explained that GSA has, at all times, observed and never objected to TCMA's markings and engaged in a clear course of conduct that recognizes the proprietary nature of the information at issue.

17.     TCMA's August 9, 2013 letter also detailed why GSA's reliance upon FAR 52.227-14 was misplaced.  That clause grants the U.S. Government certain rights in "data" provided under a Government contract, and GSA alleged that the information at issue was "data" as that term is used under FAR 52.227-14.

18.     TCMA explained that this information simply is not "data" as that term is defined in the clause.  Specifically, FAR 52.227-14 defines "data" as "recorded information, regardless of form or the media on which it may be recorded [including] technical data and computer software."  The definition expressly excludes "information incidental to contract administration, such as financial, administrative, cost or pricing, or management information."

19.     Here, the information at issue is not technical information and falls square within the exclusion quoted above, *i.e.*, it is clearly are "financial, administrative, cost or pricing, or management information" that is "incidental to contract administration."   Accordingly, deliverables at issue do not constitute "data" within the meaning of the clause, and the data rights set forth in FAR 52.227-14 do not apply to this information.

20.     Moreover, even if FAR 52.227-14 did apply, which it does not, it requires that, following receipt of a statement from the contractor explaining the basis for the proprietary markings,  the C.O. must notify the contractor, in writing, of whether the Government agrees or disagrees with the contractor's position.  Indeed, 41 U.S.C. § 4703(e)(2) (re-codified from 41

U.S.C. § 253d), requires the C.O. to issue this written determination within 60 days of receipt of the contractor's statement.

21.     In this case, GSA did not provide a written response to TCMA's August 9, 2013 letter.

22.     Nevertheless, following the August 2013 exchange, TCMA and GSA entered into discussions on the issues.  Agreement was reached on the release or non-release of all 15 deliverables that the C.O. had identified, except those items that related to the rent-per-square-foot agreed to by TCMA and its sub-licensees.  GSA still did not, however, issue a written final agency determination rejecting TCMA's written justification as it relates to the rent-per-square-foot information as required by FAR 52.227-14 and 41 U.S.C. § 4703(e)(2).  Instead, the GSA continued to accept the restrictive markings on the dollar-per-square-foot information during the remainder of 2013, all of 2014, and the first half of 2015.

23.     After almost two years without a final determination on TCMA's letter, on July 17, 2015, C.O. Vrobel issued a letter to TCMA identifying certain information that GSA intended to release in connection with the contemplated procurement for the follow-on contract to TCMA's Contract.  GSA asked TCMA to explain whether TCMA considers such information as proprietary business information.  On July 24, 2015, TCMA responded by agreeing to the release of all information proposed by GSA, except the rent-per-square-foot agreed to by TCMA and its sub-licensees, consistent with the position taken approximately two years earlier and the parties past conduct.

24.     Shortly thereafter, C.O. Vrobel was replaced by C.O. Ursula Holmes.  On August 14, 2015, C.O. Holmes issued a letter to TCMA asserting that the rent-per-square-foot

information was necessary for release into the solicitation that GSA was developing for the follow-on contract to TCMA's Contract with GSA.  Like her predecessor, C.O. Holmes relied upon FAR 52.227-14 to justify the release of such information.

25.     On September 14, 2015, similar to what occurred in 2013, TCMA responded by confirming that a full-up response would be submitted within the 60 days, as permitted by FAR 52.227-14.

26.     On October 13, 2015, TCMA submitted its full-up response, which—similar to its August 9, 2013 letter—disagreed with GSA's position.

27.     Specifically, in its October 13, 2015 letter, TCMA again asserted that the release of the information at issue would result in future competitive irreparable harm to TCMA, especially because it could be used by competing landlords to entice RRB/ITC tenants to move or not renew.  TCMA also explained that the release of the information would adversely impact TCMA's ability to perform the current GSA/TCMA contract and impede TCMA's ability to achieve revenue.  This is particularly inequitable, given that GSA would in turn attempt to hold TCMA liable for any alleged MRG shortfall.

28.     TCMA noted, as it had previously suggested, that as an alternative to releasing the rental rate per square foot figure, GSA could simply provide potential offerors with a range of rent-per-square-foot for the office and retail space achieved, and the total rental income achieved per contract year.  The release of this information would provide potential offerors on the future solicitation with an understanding of the revenue history while simultaneously protecting TCMA's confidential, proprietary and trade secret information.  This would also protect GSA, as the financial viability of the RRB/ITC is squarely within the Government's interests.

29.     Once again, GSA did <u>not</u> provide a final agency determination in response to TCMA's letter and all attempts by the parties to resolve the issue failed.

30.     Within this timeframe, yet another C.O., Meta Sherwood, took over the Contract. On May 20, 2016, approximately six months after TCMA's October 13, 2015 letter, C.O. Sherwood issued a letter stating that GSA was rejecting the written justification provided by TCMA for its markings on September 14, 2015 (TCMA's initial response, not its full-up response).  C.O. Sherwood's letter failed to address any of the other relevant correspondence, and it failed to provide any rationale for GSA's rejection of TCMA's justification for the asserted restrictions.

31.     In fact, substantively, C.O. Sherwood's letter stated only that, "I have carefully considered your justification and have determined that the markings are not authorized."

32.     On May 25, 2016, TCMA responded in writing.  Among other things, TCMA's letter requested a written statement of GSA's rationale for its rejection of TCMA's position, and it sought confirmation that, pursuant to FAR 52.227-14 (which GSA continued to rely upon), GSA would abide by the restrictive markings for 90 days or until the disposition of any lawsuit filed by TCMA within 90 days.  TCMA also sought clarification regarding GSA's rejection of its September 14, 2015 letter without any mention of its October 13, 2015 written justification, and the lack of reference to many other letters and communications on this issue.

33.     By letter dated June 2, 2016, GSA confirmed that GSA would not release any information within the relevant time period or if TCMA filed suit.  Regarding the documents at issue, GSA merely stated that it had considered "all relevant documentation and information" and that "[t]he documents identified in [GSA's] . . . May 20, 2016 letter were not intended to all

inclusive of the documents/discussions related to this issue." GSA also indicated that it would <u>not</u> provide TCMA with the memorandum outlining its decisional rationale because such memorandum containing GSA's "rationale and deliberative process for the determination is not considered releasable and will not be provided."

## <u>COUNT I</u>
## <u>UNAUTHORIZED AND/OR UNLAWFUL DISCLOSURE OF INFORMATION IN VIOLATION OF THE APA</u>

34.    TCMA hereby incorporates by reference paragraphs 1-33 above.

35.    Defendant's decision to release the information at issue is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. As such, the agency action is unlawful and must be set aside under the APA, 5 U.S.C. § 706.

36.    GSA's action is not, as Defendant asserts in its correspondence, permitted under the terms of FAR 52.227-14. As such, that clause does not authorize disclosure of the information.

37.    Even assuming that FAR 52.227-14 applies to the information at issue, which it does not, GSA's decision to disregard the protective legends contained on TCMA's rent-per-square-foot information and its proposed release of TCMA's proprietary, confidential, and trade secret information, is contrary to the regime set forth in FAR 52.227-14 and 41 U.S.C. § 4103. Thus, such decision to release constitutes an abuse of discretion, is arbitrary and capricious, and is otherwise not in accordance with law. As such, this agency action is unlawful under the APA.

38.    Additionally, FAR 27.402 ("Policy") provides as follows:

(a) To carry out their missions and programs, agencies acquire or obtain access to many kinds of data produced during or used in the performance of their contracts. Agencies require data to—

(1) Obtain competition among suppliers;

(2) Fulfill certain responsibilities for disseminating and publishing the results of their activities;

(3) Ensure appropriate utilization of the results of research, development, and demonstration activities including the dissemination of technical information to foster subsequent technological developments;

(4) Meet other programmatic and statutory requirements; and

(5) Meet specialized acquisition needs and ensure logistics support.

(b) Contractors may have proprietary interests in data. In order to prevent the compromise of these interests, agencies shall protect proprietary data from unauthorized use and disclosure. The protection of such data is also necessary to encourage qualified contractors to participate in and apply innovative concepts to Government programs. In light of these considerations, agencies shall balance the Government's needs and the contractor's legitimate proprietary interests.

(emphasis added).

39.     GSA's decision to release the rent-per-square-foot contractually agreed to by TCMA and sub-licensees fails to balance TCMA's legitimate proprietary interest in such information.

40.     Release of such information will affect TCMA's ability to achieve its current duties under the Contract and have other substantial competitive and irreparable harm to TCMA.

41.     Release of such information will provide third parties and, in particular, other competitor landlords, with undue insight into TCMA's performance methodologies.  This insight will impact TCMA's commercial endeavors as well as its ability to generate revenue under the Contract.

42.     Although GSA views its release as leveling the playing field in the contemplated contract competition, by their very nature, incumbent contractors have an advantage and there is no requirement that GSA eliminate that legitimate advantage, especially whereas here, doing so requires the release of proprietary contractor information.

43.     Indeed, the information at issue in this case is the very type of information that is defined as confidential commercial information that is exempt from disclosure under FOIA Exemption 4, 5 U.S.C. §552(b)(4).

44.     Release of the information at issue is therefore arbitrary, capricious, constitutes an abuse of discretion, and is not in accordance with the law under the APA.

45.     Moreover, GSA's failure to provide a written rationale for its decision violates FAR 52.227-14 and 41 U.S.C. § 4703 and, as such, is unlawful under the APA.

## COUNT II
## TRADE SECRETS ACT

46.     TCMA hereby incorporates by reference paragraphs 1-45 above.

47.     The information at issue constitutes trade secrets under the Trade Secrets Act, 18 U.S.C. § 1905.  Disclosure of the information at issue by Defendants is prohibited by the Trade Secrets Act and therefore not in accordance with law under Section 706 of the APA, 5 U.S.C. § 706.

48.     This Court has recognized that "[a]lthough the proprietor of commercial information does not have a private right of action to enforce § 1905, it may seek review of an agency action that violates the Trade Secrets Act on the ground it is 'contrary to law,' per § 10 of the Administrative Procedure Act."  *Taylor Energy Co. v. U.S. Dep't of the Interior*, 734 F.

Supp. 2d 112, 120 (D.C. Dist. 2010) (internal citations omitted); *see also McDonnell Douglas Corp. v. Widnall*, 57 F.3d 1162 , 1164 (D.C. Cir. 1995).

## COUNT III
## DECLARATORY JUDGMENT ACT

49.     TCMA hereby incorporates by reference paragraphs 1-48 above.

50.     This Court has authority pursuant to 28 U.S.C. §§ 2201-2202 to declare the rights of TCMA with respect to the information at issue and Defendant's proposed actions, as follows:

(a)     The information at issue is proprietary and confidential commercial information belonging to TCMA and is therefore protected by 41 U.S.C. § 4703, the FAR, the Trade Secrets Act, 18 U.S.C. § 1905, and it would be exempt by FOIA Exemption 4, 5 U.S.C. § 522(b)(4);

(b)     Defendant's decision to release the information at issue is arbitrary, capricious, or otherwise contrary to law in violation of the APA;

(c)     Defendant's failure to provide a written rationale rejecting TCMA's position is arbitrary and capricious, an abuse of discretion and otherwise contrary to the law under the APA;

(d)     Defendant's failure to provide timely or valid written final agency determinations regarding TCMA's written justifications for its asserted restrictions effected a waiver of GSA's ability to challenge or disregard TCMA's restrictions.

## COUNT IV
## WAIVER

51.     TCMA hereby incorporates by reference paragraphs 1-50 above.

52.     FAR 52.227-14 and 41 U.S.C. § 4703 contain a regime that the Government is to follow when disregarding a contractor's proprietary legend.

53.     41 U.S.C. § 4703(e) requires that within 60 days of receipt of a contractor's justification of restrictions asserted on data, "a contracting officer <u>shall</u> issue a decision or notify the party asserting the restriction of the time within which a decision will be issued."  Similarly, FAR 52.227-14 states that "[i]f the Contracting Officer determines that the markings are authorized, the Contractor will be so notified in writing.  If the Contracting Officer determines, with concurrence of the head of the contracting activity, that the markings are not authorized, <u>the Contracting Officer will furnish the Contractor a written determination, which determination will become the final agency decision regarding the appropriateness of the markings</u> . . .." (emphasis added).

54.     To date, GSA <u>never</u> issued a written determination regarding TCMA's August 9, 2013 written justification concerning the restrictions asserted with respect to the rent-per-square-foot figure, let alone issue a written determination within the 60 days required by statute or within any reasonable period.  This effected a waiver of GSA's right to do so.

55.     Instead, nearly two years later, GSA again demanded that TCMA justify the asserted restrictions in writing.  By way of a letter dated October 13, 2013, TCMA did so within 60 days, as required FAR 52.227-14—the Contract clause that GSA relied upon in issuing its demand.  GSA failed to issue a written determination regarding TCMA's letter within the 60

days required by statute or within any reasonable period.  Thus, assuming arguendo that GSA had not already waived its right to again demand a written justification regarding TCMA's restrictions (a proposition with which TCMA vehemently disagrees), GSA's failure to issue a written determination within 60 days of TCMA's second written justification resulted in a waiver GSA's ability to challenge such restrictions.

56.     On May 20, 2016, more than six months after TCMA's second written justification, GSA issued a letter rejecting TCMA's September 14, 2015 preliminary response, which preceded its October 13, 2015 written justification.  In response to TCMA's request for clarification, by letter dated June 2, 2016, GSA indicated, without any specificity, that it had considered all relevant correspondence in issuing its rejection.  Further, GSA refused to provide TCMA with its rationale for rejecting the restrictions.

57.     GSA's May 20, 2016 and June 2, 2016 letters clearly fall short of the written agency determination required by FAR 52.227-14 and 41 U.S.C. § 4703 to be provided to TCMA.  Thus, to date, the Agency has not issued a written determination regarding TCMA's October 13, 2015 written justification.

58.     By twice failing to issue a written final determination following TCMA's submission of written justifications, the Government intentionally relinquished a known right and is now barred from disregarding or challenging the protective legends and restrictions asserted by TCMA with respect to the rent-per-square-foot information.  Further, GSA is barred from releasing such information.

## PRAYER FOR RELIEF

WHEREFORE, TCMA respectfully requests the Court to:

(A)    Declare that the information at issue is confidential commercial information and is, therefore, protected by 41 U.S.C. § 4703, the FAR, common law, and the Trade Secrets Act, 18 U.S.C. § 1905;

(B)    Declare that the information at issue is confidential commercial information, and its release or disclosure would cause TCMA to suffer substantial irreparable harm, that a remedy at law is inadequate, the public would not be harmed by an injunction, and that the balancing of the harms warrants an equitable remedy;

(C)    Declare that the Defendant's decision to release the information at issue is arbitrary, capricious, constitutes and abuse of discretion, and is otherwise contrary to law in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701-706;

(D)    Declare that Defendant's failure to provide timely or valid written final agency determinations regarding TCMA's written justifications for its asserted restrictions effected a waiver of GSA's ability to challenge or disregard TCMA's restrictions;

(E)    Permanently enjoin the Defendant and its officers, agents and employees, and those acting in concert with them, from disclosing the information at issue; and

(F)     Order such other and further relief as may be deemed just and proper by the Court, including attorneys' fees pursuant to 41 U.S.C. § 7103(g)(2).


Dated: August 18, 2016

By:  s/Edward Scheideman

Edward Scheideman (DC Bar # 475128)
*edward.scheideman@dlapiper.com*
DLA PIPER LLP (US)
500 8th Street, NW
Washington, DC 20004
Telephone:   202.799.4534
Facsimile:    202.799.5534

*Attorneys for Plaintiff Trade Center
Management Associates, LLC*

*Of counsel (pro hac vice admission motion filed
concurrently with Complaint):*

Seamus Curley, DLA Piper LLP (US),
seamus.curley@dlaipiper.com

Dawn Stern, DLA Piper LLP (US),
dawn.stern@dlapiper.com